UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

SWISS DEVCO, a California corporation,
Plaintiff,

v.

U.S TOOL GRINDING, INC., a Missouri corporation, and DOES 1-10,
Defendants.

Case No.: 20cv1310 JM(RBB)

**ORDER ON MOTION TO DISMISS**

Presently before the court is a motion to dismiss filed by Defendant U.S. Tool Grinding, Inc., ("U.S. Tool") pursuant to Federal Rules of Civil Procedure 12(b)(6). (Doc. No. 16.) The motion has been fully briefed and the court finds it suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, U.S. Tool's motion is **denied**.

## I. BACKGROUND

On May 29, 2020, Plaintiff Swiss Devco ("Swiss") filed this lawsuit in San Diego County Superior Court asserting a claim for breach of contract. (Doc. No. 1-2 at 2-11.[1]) On July 10, 2020, U.S. Tool removed the action to this court pursuant to diversity jurisdiction. (Doc. No. 1.)

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

On July 31, 2020, U.S. Tool filed a motion to dismiss (Doc. No. 6) that was granted with leave to amend (Doc. No. 11).

On December 21, 2020, Swiss filed the First Amended Complaint for breach of contract. (Doc. No. 11, "FAC"). The factual allegations, accepted as true, are as follows.

Swiss and U.S. Tool do business directly with a third party, The Boeing Company ("Boeing") and are Boeing vendors. (*Id.* ¶ 8). Boeing assigns ratings to its vendors and uses a sliding price scale which penalizes vendors with a lower rating. (*Id.*) Boeing will reduce a vendor's rating if the vendor fails to timely complete orders. (*Id.*)

Swiss maintains that prior to entering the contract at issue, it had a Boeing rating of "silver." (*Id.* ¶ 9.) Any vendor competing with Swiss for a Boeing contract that was rated below silver, for example a "yellow" rated company, would have been required to bid up to 10% less than Swiss for the contract. (*Id.*)

As a vendor of Boeing's since 2004, U.S. Tool, is "very familiar with Boeing's rating system and its effect on vendors' abilities to bid on contracts with Boeing." (*Id.* at ¶ 10.)

On or about October 18, 2018, Swiss requested a written quote for delivery of parts from U.S. Tool within six weeks of Swiss's acceptance of the quote by U.S. Tool. (*Id.* ¶ 11.) Swiss's "representative specifically informed Defendant's representative that Plaintiff's request for a quote was in support of Boeing Government Contract # CF-10-0130 & FA8634-17-D-269 and, [because it was a Boeing contract], time was a very important aspect of any agreement." (*Id.*) U.S. Tool was aware that the six-week time period quoted was a material term to the agreement and that it would receive a reduced rating from Boeing if the six-week time frame could not be met. (*Id.* ¶ 12)

On November 16, 2018, Swiss accepted U.S. Tool's quote and provided U.S. Tool with the purchase order reflecting a delivery date of January 15, 2019. (*Id.* ¶ 15.) The purchase order stated:

> **Special Instructions**: Please ensure that the seller/manufacturer COC is included with the shipment. This has a due date of 1/15/2019, although early shipment is O.K. Please advise ASAP if this date will not be met. Thank you!

Doc. No. 12-2 at 4. U.S. Tool was aware that if it failed to deliver the purchase order by January 15, 2019, Swiss would be penalized by Boeing, and would lose substantial business with Boeing. (FAC ¶ 16.) Further, U.S. Tool was "aware of this based on direct conversations with Plaintiff and based upon Defendant's own status as a vendor with Boeing." (*Id.*)

Prior to U.S. Tool's acceptance of the purchase order, Swiss expressed the need for U.S. Tool to promptly notify it if the products were going to be delayed in any manner so that Swiss could mitigate any potential problems with Boeing. (*Id.* ¶ 17.) U.S. Tool agreed to do so. (*Id.*)

U.S. Tool failed to deliver the products on January 15, 2019 as expressly agreed. (*Id.* ¶ 18.) Immediately thereafter, Swiss contacted U.S. Tool to inquire about the delivery of the products. (*Id.* ¶ 19.) On January 22, 2019, Swiss was informed by a U.S. Tool representative that the purchase order was "shipping complete today." (*Id.*)

By early February, Swiss had still not received all of the parts from the purchase order and had only received a partial shipment. (*Id.* ¶ 20.) Representatives of Swiss regularly contacted U.S. Tool throughout February. (*Id.*) Swiss informed U.S. Tool: "We are really stressing over this order and really need some help getting it delivered!"; "They need to make it to our customers by [the promised dates]"; and "This order has hurt our company in a huge way!" (*Id.*)

On February 26, 2019, U.S. Tool revised its shipping date to March 5, 2019. (*Id.* ¶ 21.) Swiss informed Boeing of the revised date. (*Id.*)

By March 19, 2019, Swiss still had not received the missing products. (*Id.* ¶ 22.) Swiss again contacted U.S. Tool stating, "We still have not received them! Now these lines are again late after we gave our customer the new dates we were provided." (*Id.*) The full order of parts was delivered on March 28, 2019. (*Id.*)

As a result of U.S. Tool's breach of the Purchase Order and failure to timely deliver the parts, Swiss maintains that it was excused from making final payment. (*Id.* at 23.) Further, Swiss complains that "[a]s a direct and proximate result of U.S. Tool's failure to

timely deliver the ordered parts within the agreed upon period, Plaintiff was unable to timely comply with its contract with Boeing, and Plaintiff's rating with Boeing dropped from 'Silver' to 'Yellow.' … so Plaintiff has lost substantial contract opportunities with Boeing as a result of Plaintiff's lower rating." (*Id.* at ¶ 25.)  Swiss maintains that it has suffered foreseeable consequential damages of lost revenue in excess of $1,300,000, from contracts it would otherwise have received from Boeing, plus additional future revenue. (*Id* ¶¶ 27, 28.)

On January 14, 2021, U.S Tool filed its motion to dismiss.[2] (Doc. No. 16.) Plaintiff filed its opposition, (Doc. No. 17) and Defendant filed a reply, (Doc. No. 18).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).   But, even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

---

[2] On December 28, 2020, the court granted U.S. Tool's *Ex-Parte* Application for Extension of Time to File Response to First Amended Complaint.  (*See* Doc. Nos. 13, 14, 15.)

## III. DISCUSSION

The parties take opposing positions on whether the FAC meets the necessary pleading standards to state a claim for breach of contract.

In California, to successfully bring a breach of contract claim "a plaintiff must show: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2001). The determination as to whether a contract is or is not ambiguous is a question of law for the court. *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995). "A contract or a provision of a contract is ambiguous if it is reasonably susceptible of more than one construction or interpretation." *Castenada v. Dura-Vent Corp*¸ 648 F.2d 612, 619 (9th Cir. 1981).

### A. Consequential Damages

U.S Tool's primary arguments for dismissal are based around the damages prong of Swiss's breach of contract claim. First, U.S. Tool contends Swiss has failed to plead sufficient facts to support its claim for damages. (Doc. No. 16-1 at 12-14.) Second, it claims that the consequential damages sought by Swiss were not contemplated by the parties at the time they entered into the contract. (*Id*. at 14-16.) In opposition, Swiss maintains that the FAC meets the necessary pleading standards and adequately alleges damages. (Doc. No. 17 at 11-14, 16.)

As the court explained previously, Federal Rule of Civil Procedure 9(g) requires that "if an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g).

> In a contract case, 'while both special and general damages must be the natural and proximate cause of the breach of the agreement, general damages are such as inevitably follow, while special damages are such as may, or may not follow…The distinction between general and special damages for breach of contract is that the former are such damages as the law implies and presumes from the breach complained of, while the latter are such as have proximately resulted but do not always immediately result from the breach and will, therefore, not be implied by law.'

*City & Cnty. of S.F. v. Tutor-Saliba Corp.*, No. C 02-5286 CW, 2005 WL 645389, at *17 (N.D. Cal. Mar. 17, 2005) (quoting *Henry Pratt Co. v. Stoody Co.*, 16 F.R.D. 175, 177 (S.D. Cal. 1954). "[S]pecial, or consequential, damages are not usually recoverable in an action for breach of contract." *Contempo Metal Furniture Co. of Cal. v. E. Tex. Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981).[3] Thus, in order to recover special damages a plaintiff "must show that the carrier had notice of the special circumstances from which the damages would flow." *Id.* (citations omitted).

Here, the question is whether Swiss has set forth sufficient facts to establish that prior to entering the agreement with it, U.S. Tool was aware that Swiss would suffer consequential damages in the form of having its rating reduced which, in turn, would result in substantial lost contract opportunities with Boeing. As alleged, U.S. Tool and Swiss were both long-term vendors of Boeing and familiar with the rating system Boeing employed, and that Boeing penalized vendors for failing to deliver parts on time. (*See* FAC ¶¶ 8-10.) It is also alleged that U.S. Tool was made aware that the ordered parts were for a Boeing contract. (*Id.* ¶ 11.) Further, as alleged, Swiss informed U.S. Tool of the time-sensitive nature of the contract, expressing that the six-week time frame was a material term and that it would be penalized by Boeing by way of a reduced rating, "which would cause Plaintiff to lose substantial business with Boeing." (*Id.* at ¶¶ 12, 14, 16.) Additionally, the purchase order reflected the six-week time frame, provided that U.S. Tool was to notify Swiss "ASAP" if there were any issues regarding the delivery timeframe and, once U.S Tool missed the January 15, 2019 deadline, it is alleged that U.S. Tool needed to inform Swiss of any delays so it could mitigate its damages with Boeing. (*Id.* at ¶¶ 15, 17; *see also* Doc. No. 12-2 at 4.) It is also alleged that U.S. Tool expressly acknowledged the time requirements and that U.S. Tool's knowledge of the consequences to Swiss was based

---

[3] Defining special damages as "those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made." *Contempo Metal Furniture Co.,* 661 F.2d at 765.

upon direct conversations between the companies. (FAC ¶¶ 15, 17.) Moreover, U.S. Tool's own experience with Boeing, made it aware of the potential consequences Swiss was facing. (*Id.* ¶ 14.) Taking these allegations as true, these facts are sufficient to support a finding that Swiss's losses were the natural and proximate consequence of U.S. Tool's conduct.

Furthermore, the court is not persuaded by U.S. Tool's contention that further itemization of the special damages is required. Swiss has alleged that as a result of the delayed shipment: (1) its rating was downgraded from silver to yellow; (2) the lower rating meant it would have to bid as much as 10% lower for the same contracts; and (3) the new bid prices were more than its profit margin on most contracts with Boeing. (*Id.* ¶ 25.) The net effect being that Swiss's relationship with Boeing suffered losses to the tune of $1.3 million. (*Id.* ¶27.) The FAC only alleges one claim, for breach of contract, and does not attribute the lost business and profit to any other claim. *See, e.g., First Advantage Background Servs. Corp. v. Private Eyes, Inc.,* 569 F. Supp. 2d 929, 938 (N.D. Cal. 2008) (concluding specific damages allegations were inadequate for a claim based on trade libel when no dollar amount was provided because Private Eyes simply relied on the total damages calculation for all of its claims, therefore, it was "impossible to determine what, if any, damage to its relationship with CCE Private Eyes claims to have suffered just as a result of the libelous statements."). The $1.3 million is clearly identified solely as loss of business and profits, (*see* FAC ¶ 27 Swiss "lost at least 1.3. million dollars from contracts [it] would otherwise [have] received from Boeing"), and not as loss of good will, etc. *See Henry Pratt, Co.* 16 F.R.D. at 178 (a simple itemization of the $185,000 alleged as damages to its 'good will, business, and profits,' allocating $100,000 was damage to good will, and $85,000 was loss of business and profits was found to be sufficient at the pleadings stage for special damages). Any "further itemization is evidentiary and can be secured by discovery proceedings under the Federal Rules of Civil Procedure." *Id.* In other words, the court is able to determine on the face of the FAC that special damages are being sought as a result of the breach of contact claim. *See Ores v. Willow W. Condo. Ass'n*, No. 94 C

4717, 1996 WL 111894, * 6 (N.D. Ill. 1996) ("Rule 9(g) does not require that the plaintiff set forth his or her entire legal theory underlying asserted special damages. Instead, it requires that the plaintiff plead facts that adequately reveal the nature of the claimed damages to permit the defendant to respond in his answer and further delineate the claim during pretrial discovery.").[4]

For the reasons set forth above, the court concludes that Swiss has adequately pled specific damages and denies U.S. Tool's motion to dismiss on this ground.

**B. Excuse from Performance**

Secondarily, U.S. Tool contends that dismissal is appropriate because Swiss has failed to specifically plead excuse of its own performance. (Doc. No. 16-1 at 16-18.) Swiss contends that it has "properly alleged partial payment and that it was excused from any further payment due to U.S. Tool's material breach of the parties' contract." (Doc. No. 17 at 15.) Swiss also maintains that under California law it was excused from performing its contractual obligations because U.S. Tool failed to timely deliver the ordered parts and that this failure constituted a material breach of the contract. (*Id.* at 14.)

"[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (citation omitted). "While a plaintiff may plead its performance of a contract in general terms, 'excuses must be pleaded specifically.'" *New Box Solutions, LLC v. Davis,* CV 18-5324-RSWL-KSw, 2018 WL 4562764, at * 5 (C.D. Cal. Sept. 18, 2018) (quoting *Durell*, 183 Cal.App.4th 1368). "When a party's failure to perform a contractual obligation

---

[4] *See cf. City & Cnty. of S.F. v. Tutor-Saliba Corp.,* No. C 02-5286 CW, 2005 WL 645389, *18 (N.D. Cal. Mar. 17, 2005) ("At this stage in the proceeding, the Court cannot determine whether the damages sought in each claim would inevitably follow from the alleged wrongful conduct. Therefore, the Tutor Defendants' motion to dismiss the contract claim based on a failure to allege special damages is DENIED. If, at the summary judgment or trial stage of the proceedings, it is determined that Plaintiffs are seeking special damages, special damages may be denied").

constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011) (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 813, 814, p. 906 (Witkin) ("*Material* failure of consideration discharges the other party's duty.")) (collecting cases). "However, if reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law." *Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 184 Cal. App. 3d 1520, 1527 (1986).

Here, Swiss has alleged that timely delivery of the parts from U.S. Tool was a material term of the parties' agreement (*see* FAC at ¶¶ 14, 23, 24). Swiss contends that it performed its obligations under the contract by making partial payment to U.S. Tool. (*Id.* ¶ 23.) It maintains it was excused from full payment of the contract price because the additional two months it took U.S. Tool to deliver the parts constituted a material breach of the parties' contract (*see id* at ¶¶ 22, 23). Swiss has also alleged that U.S. Tool was informed that time was a material term of the contract prior to its execution. (*Id.* at ¶ 12.) Further, it is alleged that "[p]ayment was to be made after a timely delivery." (*Id.* at ¶ 23.)

For purposes of the motion to dismiss, the court accepts as true the factual allegations of the FAC. Whether the breach was so material as to constitute cause for Swiss to terminate a contract is properly a question for the trier of fact, and not for determination at this time. *See Brown*, 192 Cal. App. 4th at 277 ("Whether a breach is so material as to constitute cause for the injured party to terminate a contract is ordinarily a question for the trier of fact."). Consequently, the court denies U.S. Tool's motion to dismiss on this ground.

## IV.   CONCLUSION

In accordance with the foregoing, Defendant's motion to dismiss the FAC is **DENIED**. (Doc. No. 16.) Defendant shall file its answer to the FAC in accordance with

///

///

///

the Federal Rules of Procedure.

IT IS SO ORDERED.

Dated: April 29, 2021

Hon. Jeffrey T. Miller
United States District Judge